IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMERICAN MINT LLC, | : | |
| GOEDE | : | |
| BETEILIGUNGSGESELLSCHAFT, | : | CIVIL ACTION NO. 1:05-CV-650 |
| and MICHAEL GOEDE, | : | |
| | : | (Judge Kane) |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| GOSOFTWARE, INC., | : | |
| | : | |
| Defendant | : | |

**MEMORANDUM AND ORDER**

Before the Court is Defendant's motion to dismiss Plaintiffs' complaint in its entirety. (Doc. No. 10.)  The motion has been fully briefed and is ripe for disposition.  For the reasons that follow, the motion will be granted.

**I.   BACKGROUND**[1]

Plaintiff Goede Beteiligungsgesellschaft is a corporation organized under the laws of the Federal Republic of Germany, and Plaintiff Michael Goede (collectively, with Goede Beteiligungsgesellschaft, "Goede") is a citizen of Germany,.  (Compl. ¶¶ 2-3.)  Goede is in the business of manufacturing collectible coins and its principal place of business is in Germany. (Id. ¶ 9.)  Plaintiff American Mint LLC ("Mint") is a limited liability company organized under the laws of the Commonwealth of Pennsylvania, with its sole place of business located in

---

[1] The following facts are taken from Plaintiffs' complaint (Doc. No. 1) and are accepted as true for purposes of evaluating the pending motion.  See Fed. R. Civ. P. 12(b)(6); United States Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002).

Mechanicsburg, Pennsylvania. (Id. ¶ 1.) Mint is wholly owned by Goede and is the marketer for Goede merchandise within the United States. (Id. ¶¶ 8, 10.) Credit card sales for Mint are processed by Goede personnel in Germany. (Id. ¶ 13.)

Defendant GOSoftware, Inc., ("GO") is a corporation organized under the laws of the State of Georgia with its principal place of business located in Savannah, Georgia. Defendant manufactures and sells software known as RiTA Software ("RiTA") designed to facilitate the billing of credit cards. (Id. ¶ 14.) In early 2003, Plaintiffs Goede and Mint sought to acquire RiTA and allegedly "explained to [GO] personnel that the RiTA [software] would be installed and used in the Federal Republic of Germany, and would thus need to be compatible with German numeric symbols."[2] (Id. ¶ 15.) In response, Plaintiffs Goede and Mint "were told by [GO] that RiTA would be able to facilitate the processing of credit card charges to consumer credit card accounts." (Id. ¶ 16.)

Plaintiffs allege that on May 16, 2003, Goede and Mint entered into a contract to purchase the RiTA software from Defendant at a total cost of $10,995. (Id. ¶ 17.) The alleged contract named Mint and GO as the parties to the contract.[3] Pursuant to Order dated August 16, 2005 directing Plaintiff to clarify the Goede Plaintiff's standing as parties to the alleged contract, Plaintiffs submitted a supplemental brief on August 30, 2005, in which they assert that "it would

---

[2] In Germany, financial transactions use a comma to reflect a decimal point and a decimal point where an American financial transaction would use a comma. For example, $24.00 in the United Sates would be reflected as $24,00 in Germany.

[3] Plaintiff's submitted a "true and correct" copy of the alleged contract that appears to be unsigned. (Doc. No. 5.) However, in support of its motion to dismiss, Defendant attached a signed copy of the alleged contract. (Doc. No. 23, Ex. 1.) In their supplemental brief, Plaintiff's acknowledge the signed contract and assert that it was signed by Plaintiff Michael Goede. (Doc. No. 26.)

appear that [the alleged contract] was signed by Michael Goede." (Doc. No. 26.) On May 27, 2003, Mint issued a check to GO for payment of the RiTA software. (Doc. Nos. 23, Ex. 1; 26.)

The RiTA software was shipped to Germany and was installed by Goede personnel. Plaintiffs allege that Defendant was at all times aware of the difference in numeric systems and the fact that RiTA was to be used in Germany. However, shortly after the installation, Plaintiffs discovered that the RiTA software was not functioning properly. (Compl. ¶ 19.) Upon notification, Defendant provided additional software and instruction in an effort to make the software function properly. (Id. ¶ 20.) Thereafter, the software represented to Plaintiffs that correct charges were being made to consumer credit card accounts; however, the software continued billing consumers amounts that exceeded the actual purchases. (Id. ¶ 21.)

Mint consumers began receiving credit card statements reflecting charges to their accounts exceeding the amount authorized. (Id. ¶ 26.) As a result, Plaintiffs allegedly incurred damages in the amount of approximately $281,758 for bank charges and other charges associated with the correction of the improperly charged consumer credit accounts. (Id. ¶ 27.) Plaintiff Mint also alleges the loss of many customers after the discovery of the overcharged credit card accounts. As a result, Mint estimates that it lost anticipated profits of more than $700,000.

On March 31, 2005, Plaintiffs Goede and Mint jointly filed a six-count complaint against Defendant. In their complaint, Plaintiffs assert that the following claims are governed by the United Nations Convention on International Sale of Goods, art. 1 et seq., 15 U.S.C.App. 332 (1998) ("CISG"): breach of contract; breach of implied warranties of merchantability and fitness for a particular purpose; and breach of express warranty. Plaintiffs further assert claims for negligence and negligent misrepresentation. Plaintiffs seek judgment against GO in the amount

of $981,758 plus court costs.

In response, on June 6, 2005, Defendant moved to dismiss all six counts of Plaintiffs' complaint. (Doc. No. 10.) Defendant argues the Court lacks subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1332 and therefore the complaint should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[4]

## II.   STANDARD OF REVIEW

Defendant moves to dismiss Plaintiff's complaint under Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure. A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). When considering a motion to dismiss, the court accepts as true all factual allegations contained in the complaint and views them in the light most favorable to the plaintiff. United States Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002). The plaintiff is required to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that those elements exist." Kost, 1 F.3d at 183 (citations omitted). A court should grant a motion to dismiss only if it appears the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Wisniewski v. Johns-Manville Corp., 759 F.2d 271, 273 (3d Cir. 1985) (citations omitted).

In contrast to Rule 12(b)(6), "[w]hen subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." Kehr Packages, Inc. v. Fidelcor, Inc.,

---

[4] Defendant also argues that Plaintiffs have failed to state a claim under each count and therefore the complaint should be dismissed in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. However, for the reasons discussed herein, the Court will not address this aspect of Defendant's motion.

926 F.2d 1406, 1409 (3d Cir. 1991). There is an important distinction between 12(b)(1) motions that present a facial attack on the complaint and those that question the existence of subject matter jurisdiction in fact, apart from the pleadings. Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). While the facial attack offers the plaintiff the safeguard of requiring the court to consider the allegations of the complaint as true, the factual attack allows the court to "weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id. at 891. "If an aspect of a claim concerns jurisdiction, and when jurisdiction turns on whether a particular fact is true . . . (as opposed to whether the complaint sufficiently alleges jurisdiction on its face), a court may inquire into the jurisdictional facts without viewing the evidence in a light favorable to either party." Nesbit v. Gears Unlimited, Inc., 347 F.3d 72, 77 (3d Cir. 2003) (citing Mortensen, 549 F.2d at 891). In doing so, the court may consider and weigh evidence outside of the pleadings to answer the jurisdictional question. Gould Elecs., Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000) (citing Mortensen, 549 F.2d at 891). However, the plaintiff always bears the burden of convincing the court, by a preponderance of the evidence, that the court has jurisdiction. Id.; see also McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936).

### III.    DISCUSSION

Defendant argues that Plaintiffs' claims should be dismissed because the Court lacks subject matter jurisdiction. A federal court has original jurisdiction over a civil action (a) where the claim arises under the Constitution, laws, or treaties of the United States, pursuant to 28 U.S.C. § 1331 or (b) where the amount in controversy exceeds the sum or value of $75,000 and there is diversity among the parties, pursuant to 28 U.S.C. § 1332. Defendant argues that the

complaint should be dismissed in its entirety because the complaint does not present a federal question and the amount in controversy is less than $75,000.

**A.     Federal Question**

Plaintiffs assert that subject matter jurisdiction is proper because the claims arise under the CISG, a treaty which the United States has ratified.[5] Defendant argues that the CISG does not apply because (1) the alleged contract contains a choice of law provision providing that Georgia law governs the alleged contract, and (2) Plaintiff Goede was not a party to the alleged contract.

**1.     Choice of Law Provision**

The CISG applies to contracts for sale of goods between parties whose places of business are in different contracting States. CISG art. 1(1). In the United States, the CISG is a self-executing treaty with the preemptive force of federal law. See U.S. Const., Art. VI (Supremacy Clause); see also BP Oil In'l, Ltd. v. Empresa Estatal Petroleos de Ecuador, 332 F.3d 333, 336 (5th Cir. 2003) (the CISG creates a private right of action in federal court); Vlero Mkt. & Supply Co. V. Greeni Oy & Greeni trading Oy, 373 F. Supp. 2d 475, 480 n.7 (D.N.J. 2005) (same); Usinor, 209 F. Supp. 2d at 884. As incorporated federal law, the CISG governs the dispute so long as the parties have not elected to exclude its application. CISG art. 6. However, parties seeking to apply a signatory's domestic law in lieu of the CISG must affirmatively opt out of the CISG. See Vlero, 373 F. Supp. 2d at 482) (agreement to include a provision to the effect that New York law governed failed to specifically exclude application of the CISG and

---

[5] The United Nations Convention on International Sale of Goods ("CISG") was ratified by the United States on December 11, 1986, and became effective on January 1, 1988. 15 U.S.C.App. at 332.

therefore the CISG applied); see also BP Oil, 332 F.3d at 337 (holding that "if the parties decide to exclude the [CISG], it should be expressly excluded by language which states that it does not apply"); Ajax Tool Works, Inc. v. Can-Eng Mfg. Ltd., No. 01-5938, 2003 WL 223187, at *3 (N.D. Ill. Jan. 30, 2003) (holding that contract stating the agreement shall be governed by the laws of Canada, does not exclude the CISG); Asante Techs., Inc. v. PMC-Sierra, Inc., 164 F. Supp. 2d 1142, 1150 (N.D. Cal. 2001) (holding that a choice-of-law provision selecting British Columbia law did not "evince a clear intent to opt out of the CISG").

The alleged contract in this case contains a provision selecting Georgia law as the law governing disputes under the contract. However, the contract fails to expressly exclude the CISG by language which affirmatively states it does not apply. BP Oil, 332 F.3d at 337. Thus, if the facts are proven as alleged, then the CISG would pre-empt domestic sales laws that otherwise would govern the contract. Accordingly, the Court rejects Defendant's choice of law argument as a basis for finding that the Court lacks jurisdiction over this dispute.

### 2. Parties to the Contract

The CISG applies "to contracts of sale of goods between parties whose places of business are in different States . . . when the States are Contracting States." CISG art. 1(1)(a). However, the fact that the "parties have their places of business in different States is to be disregarded whenever this fact does not appear either from the contract or from any dealings between, or from information disclosed by, the parties at any time before or at the conclusion of the contract." CISG art. 1(2). If a party has more than one place of business, then that party's "place of business is that which has the closest relationship to the contract and its performance, having regard to the circumstances known to or contemplated by the parties at any time before or

at the conclusion of the contract." CISG art. 10.  However, the CISG applies only to buyers and sellers, not to third parties.  CISG art. 4; see also Usinor Industeel v. Leeco Steel Prods., Inc., 209 F. Supp. 2d 880, 885 (N.D. Ill. 2002) (stating that the text of the CISG and analysis by commentators suggest that the CISG does not apply to third parties).

In this case, Plaintiff Goede's place of business is Germany and Defendant's place of business is the United States, both signatories to the CISG.  Plaintiffs allege that Mint and Goede purchased the RiTA software from Defendant.  Plaintiffs further allege that the software was shipped to Goede in Germany and Defendant provided service to the software in Germany.  Plaintiff allegedly disclosed to Defendant prior to the sale that the RiTA software would need to be compatible with the German numeric system.

Plaintiffs argue that the Court must accept as true all factual allegations contained in the complaint and vew them in a light most favorable to the Plaintiffs.  Although this is the appropriate standard for a motion to dismiss pursuant to Rule 12(b)(6), the standard applied to a factual challenge of subject matter jurisdiction pursuant to Rule 12(b)(1) is more demanding.  "If an aspect of a claim concerns jurisdiction, and when jurisdiction turns on whether a particular fact is true . . . a court may inquire into the jurisdictional facts without viewing the evidence in a light favorable to either party."  Nesbit v. Gears Unlimited, Inc., 347 F.3d 72, 77 (3d Cir. 2003).  In doing so, the Court may consider and weigh evidence outside of the pleadings to answer the jurisdictional question.  Gould Elecs., Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000).  Moreover, Plaintiff always bears the burden of convincing the court, by a preponderance of the evidence, that the court has jurisdiction.  Id.; see also McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936).

On August 16, 2005, the Court issued an order directing the parties to brief the issue of whether Plaintiff Goede is in fact either a purchaser of the software or a party to the contract. (Doc. No. 25.) In response, Plaintiffs attempted to meet their burden of persuasion by simply stating that it "would appear that [the alleged contract] was signed by [Plaintiff] Michael Goede." (Doc. No. 26.) However, Plaintiffs failed to support this fact in any way. In addition, Plaintiffs failed to account for the fact that the alleged contract was addressed to Plaintiff Mint and that the software was paid for with a check tendered by Plaintiff Mint. Although Plaintiff Goede was allegedly the ultimate user of the software, the alleged contract and check demonstrate that the contract was between Defendant GO and Plaintiff Mint.

As a result, the Court finds that Plaintiffs have failed to establish by a preponderance of the evidence that Plaintiff Goede was a purchaser of the software or a party to the contract. Therefore, the Court finds that the alleged contract is between Plaintiff Mint, a Pennsylvania company, and Defendant, a Georgia company. Accordingly, the CISG is not applicable to the alleged contract and the Court lacks subject matter pursuant to 28 U.S.C. § 1331.

**B.     Diversity**

In the alternative, Plaintiffs contend that subject matter jurisdiction is proper because there is complete diversity among the parties and the amount in controversy is approximately $982,000.[6] In order for a district court to have original jurisdiction over a diversity claim, the plaintiff must be seeking recovery for an amount that exceeds $75,000 and the claim must be

---

[6] Plaintiffs claim to have incurred damages in the amount of approximately $281,758 for bank charges and other charges associated with the correction of the improperly charged consumer credit card accounts. (Doc. No. 1 at ¶ 27.) In addition, Plaintiffs claim that Mint lost anticipated profits of more than $700,000 as a result of the software's failure to recognize a comma as a decimal point. (Id. at ¶ 28.)

between:  (a) citizens of different States; (b) citizens of a State and citizens or subjects of a foreign state; or (c) citizens of different States and in which citizens or subjects of a foreign state are additional parties.  28 U.S.C. § 1332.

It is undisputed that there is complete diversity among the parties.  However, the parties disagree about whether Plaintiff's damages exceed $75,000.  Defendant asserts that the alleged contract contains a provision that limits liability to the purchase price of the software, $10,995, and precludes recovery for incidental or consequential damages.  In contrast, Plaintiffs argue that they have suffered damages in the amount of $981,758 as a result of Defendant's breach of contract, and they contend that the liquidated damages provision contained in the alleged contract is invalid because the CISG does not permit a limitation on damages.  This represents Plaintiff's single argument that the damages incurred exceed the $75,000 threshold required for diversity jurisdiction.  As discussed above, the Court finds that the CISG is inapplicable to the contract at issue.  However, even if the CISG did apply, it would not preclude the parties from agreeing to liquidated damages.

Article 74 of the CISG states that damages for breach of contract may consist of "a sum equal to the loss, including loss of profit, suffered by the other party as a consequence of the breach."  CISG art. 74.  However, such damages are limited to that "which the party in breach foresaw or ought to have foreseen at the time of conclusion of the contract, in the light of the facts and matter of which he then knew or ought to have known, as possible consequence of the breach of contract."  CISG art. 74.  Plaintiffs allege that the damages and loss of anticipated profits suffered by Plaintiffs, as well as attorney's fees incurred in this action, were a direct

consequence of Defendant's breach.[7]  (Doc. No. 1 at ¶ 35.)  Plaintiffs claim that such damages were foreseeable, or out to have been foreseeable to Defendant at the time of the conclusion of the contract terms and were a direct consequence of Defendant's breach. (Id.)  In support thereof, Plaintiffs allege that Defendant was aware of the need for compatibility with the German numeric system and that Defendant was promptly notified upon the software's failure.

The terms and conditions and all limitations contained in the alleged contract are not completely superceded by the provisions of the CISG.  Article 6 states that parties may, by contract, "derogate from or vary the effect of any of [the CISG's] provisions."  CISG art. 6; see Ajax Tool Works, Inc. v. Can-Eng Mfg. Ltd., No. 01-5938, 2003 WL 223187, at *3 (N.D. Ill. Jan. 30, 2003) ("[t]he CISG does not preempt a private contract between parties; instead, it provides a statutory authority from which contract provisions are interpreted, fills gaps in contract language, and governs issues not addressed by the contract").  Thus, under the CISG, Plaintiffs and Defendant were free to agree to liquidate damages in the event of a breach of contract.

Notwithstanding, as discussed above, the CISG is not applicable to the alleged contract. Plaintiffs failed to present any alternative arguments with respect to the validity of the liquidated damages provision.  Accordingly, the Court finds that the agreed upon damages are less than the

---

[7] The Court notes that attorney's fees have been held not recoverable as damages under the CISG because "foreseeable loss" does not include attorney's fees incurred in the litigation of a suit for breach of contract.  See Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co., Inc., 313 F.3d 385 (7th Cir. 2002) (holding that a loss recoverable as remedy for breach of contract under the CISG does not include attorney's fees), cert. denied, 124 S. Ct. 803, 157 L. Ed. 2d 732 (U.S. 2003); Chicago Prime Packers, Inc. v. Northam Food Trading Co., 320 F. Supp. 2d 702 (N.D. Ill. 2004) (denying the plaintiff's claim for attorney's fees in a breach of contract action under the CISG).

requisite $75,000, and therefore the Court lacks subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

**IV.**     **CONCLUSION**

Based on the foregoing, the Court lacks subject matter jurisdiction over this action under both 28 U.S.C. §§ 1331 and 1332.  Therefore, the Court concludes that Defendant's motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure must be granted.

**V.     ORDER**

**AND NOW**, this 5th day of January, 2006, upon consideration of the foregoing, **IT IS HEREBY ORDERED THAT** Defendants' motion to dismiss (Doc. No. 10) is **GRANTED** and Plaintiffs' Complaint (Doc. No. 1) is **DISMISSED** in its entirety.  The Clerk of Court shall close the file.

  S/ Yvette Kane
Yvette Kane
United States District Judge